FORT WORTH & RIO GRANDE RAILWAY COMPANY v. A. M. STEWART.

No. 2435.    Decided February 16, 1916.

Carriers of Passengers—Assault by One Passenger Upon Another—Negligence.

In an action by a passenger against a railway for negligence of the conductor in failing to protect him against assault by another passenger, conflicting evidence, here considered, is held not to establish the duty of the conductor, as matter of law, to have ejected the disorderly passenger from the train before the assault was committed, and to require the giving of a requested instruction relieving the defendant from liability if the attack was so sudden and of such a character that the conductor could not, though he ought to have been present to protect plaintiff, have been reasonably able to do so. (Pp. 595-601.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Brown County.

Stewart recovered judgment against the railway company, and the latter obtained writ of error upon its affirmance on defendant's appeal.

*C. L. McCartney,* and *Andrews, Ball & Streetman,* for plaintiff in error.—The assault upon plaintiff having been suddenly and unexpectedly made, and not apprehended by defendant's conductor, the defendant is not legally liable.   Railway Co. v. Long, 13 Texas Civ. App., 664, 36 S. W., 486; Prokop v. Railway Co., 34 Texas Civ. App., 520, 79 S. W., 102; Railway Co. v. Duncan, 121 S. W., 363; Kinney v. Railway Co., 99 Ky., 59, 34 S. W., 1067; Tall v. Packett Co., 47 L. R. A., 123; Thompson on Negligence, sec. 3087; Putnam v. Railway Co., 55 N. Y., 108; Railway Co. v. Boyle, 59 L. R. A., 105.

*T. C. Wilkinson,* for defendant in error.—The evidence abundantly shows that the conduct of the offending passenger was not only such as to put a prudent person upon notice that molestation of other passengers, and especially of appellee, was to be reasonably anticipated; but also that the conductor of said train had actual knowledge of such conduct, and apprehended violence to appellee from said passenger. M. K. & T. Ry. Co. v. Russell, 8 Texas Civ. App., 578, 28 S. W., 1042-1044; I. & G. N. Ry. Co. v. Henderson, 82 S. W., 1065-1066; McCordell v. G. C. & S. F. Ry. Co., 102 S. W., 941-943; Hutchinson on Carriers (3rd ed.), secs. 980-985; 5 Am. & Eng. Enc. of Law, 553-557; R., etc., Ry. Co. v. Jefferson, 89 Ga., 554, 32 Am. St. Rep., 87-89; U. S. & E. Ry. Co. v. Deane, 93 Md., 619, 86 Am. St. Rep., 453-459; E. & I. Ry. Co. v. Darting, 33 N. E., 636-637.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was instituted in the District Court of Brown County, Texas, by A. M. Stewart, the defendant in error, against the Fort Worth & Rio Grande Railway Company, plaintiff in error, to recover damages for personal injuries inflicted upon Stewart by a passenger on the plaintiff in error's train.   It was alleged by Stewart that on the 15th day of May, 1908, he was a passenger thereon, going from Fort Worth to Brownwood; that while making this journey he was set upon and assaulted by another passenger; that he was struck across the head over the left ear with a large bottle of whiskey; that by said blow he was knocked down, his scalp badly contused, and his skull fractured; that as a consequence of said blow and said injuries his hearing in his left ear had been totally destroyed; that the defendant's conductor in charge of said train knew that the passenger who assaulted him and several of his associates were drunk and quarrelsome, and knew that they had already, while on said train, been quarreling and fighting; that they had fought with the conductor, and had threatened to assault plaintiff, and the conductor knew that an injury was threatened to plaintiff by them,

and that he negligently failed and refused to quiet or suppress the drunken conduct of the man who assaulted him, and his associates, and refused to eject them from the train, or otherwise protect the plaintiff.

The plaintiff in error alleged that if Stewart was struck by a fellow passenger, it was done without his knowledge, and without the knowledge of its servants and agents in charge of said train; that they had no reasonable cause to anticipate that any one would make an assault, or was likely to make an assault upon the plaintiff; that if the defendant in error was assaulted that such assault was a sudden, wilful and unexpected act on the part of some third person in no wise connected with the defendant, and in no manner under its control; and that said injuries could not reasonably have been foreseen, anticipated or prevented by the plaintiff in error.

There was a trial by jury, which resulted in a verdict in favor of Stewart, and against the railway company. The judgment of the District Court was affirmed by the honorable Court of Civil Appeals for the Third District. A writ of error was granted by this court, and the questions presented by the petition for writ of error will now be reviewed.

Plaintiff in error claims there was error in the refusal by the trial court to give defendant's special charge No. 8, which is as follows:

"If you believe from the evidence in this case that under all the circumstances defendant's conductor, at and before the time plaintiff was assaulted, as testified to by him, ought to have remained with plaintiff for his care and protection, yet if you believe from the evidence that the attack made upon plaintiff was so sudden and of such a character that the conductor, if present, could not reasonably have prevented same, then you are instructed that you can not find a verdict for the plaintiff on account of the fact that said conductor was not present and personally looking after plaintiff's protection at the time he was assaulted."

The honorable Court of Civil Appeals in passing upon this assignment held that it was not error to refuse said charge, it being of the opinion that it was the duty of the plaintiff in error's conductor to eject the passenger who assaulted Stewart and his associates from the train, and that the conductor was guilty of negligence in failing so to do, before the assault was committed; and that as the special charge requested authorized the defeat of liability on a less degree of care by the conductor than ejection, it was proper to refuse it.

To hold as a matter of law that the conductor was guilty of negligence in not ejecting said parties from the train, the evidence that it was the conductor's duty so to do should be so conclusive that all reasonable minds would agree that it was his duty to take such action. If there was room for reasonable minds to differ about this, then it was a question of fact for the jury to determine, and could not be held by this court to be negligence as a matter of law, there being no statute which required the conductor to eject them. It becomes appropriate, therefore, to quote the material portions of the evidence which has a bearing upon this issue:

Stewart testified, in substance, that he was on the road most all the time, that he had a place in Brownwood, in which city he maintained headquarters; that on May 15, 1908, about 2:30 a. m., he boarded the plaintiff in error's train at Fort Worth, with Brownwood as his destination; that he went into the smoker, and found a lot of people sleeping in there, and a good deal of noise, and nearly all of the seats taken, and that he passed on to the little compartment that was partitioned in the front end of the car, about four seats; that some other gentleman was lying on the right-hand side, and that he took two seats on the left-hand side and placed them together and went to sleep; that later in the night the conductor came through and took up his ticket, and that he again went to sleep; that it must have been about four o'clock in the morning when he was awakened by a fellow having his foot over the seat and across his, Stewart's, neck, which excited him, and that he grabbed the fellow by the ankle and knocked his foot off of his neck and looked up, and Mr. Blythe and this fellow were fighting; that this fellow had Mr. Blythe around the throat with both hands, and two or three other fellows had hold of this man pretending to pull him off, and this other man had his foot over the seat and across Stewart's neck; that when the others pulled him loose he turned loose with one hand and commenced pounding the conductor over the head with his fist; that when they got him loose Mr. Blythe, the conductor, passed into the large room of the smoking compartment; that he, Stewart, then told these fellows about the time Mr. Blythe left to go into the other end of the car, "It looks to me like you fellows might find some other place to fight instead of fighting over me"; that Mr. Blythe passed out and did not reply; that this fellow said, "By-God, maybe you don't like it"; that he replied, "I don't like it." "I am a passenger on this train like you are, and not mixed up in the fights at all"; that a considerable quarrel followed, and that he ran his hand in his pocket as though he was going to pull a gun; that he, Stewart, said, "Young man, you are too close to me to pull a gun—I will knock you through that window too quick to think about it. I am just as liable to use it as you are," and there were several words passed between them, and the parties passed back out at the front end of the car on the platform; that he heard talking out there; that there were four of these fellows, and that they all went out together; that in a few minutes, Mr. Blythe, the conductor, came back, and that it looked to him like he met the other parties in about the same place, and they passed some words and licks; that he sat in his seat and did not take any hand; that he thought he was out of it, as he had had his say and was perfectly satisfied; that Mr. Blythe, the conductor, and the other parties then passed into the large end of the compartment; that after this second fight these parties began to abuse him for everything they could think of; that he replied, "There are four of you fellows, I can not fight all of you"; that at the time these fellows were talking to him Mr. Blythe was standing in the door listening to them; that they abused him and called him a "Damn-son-of-

a-bitch," and everything in the world that could be thought of; that they called him everything, names that he would not like to mention; that the fellow that afterwards struck him with the bottle did the talking; that the other fellows did not do a thing but listen; that they did not try to quiet the fellow who was talking, they never said a word; that they were all drinking; that this fellow that was talking was drunk enough to stagger; that after these fellows had left the place where Stewart was and had gone into the other compartment, in about five minutes, he should judge, though he couldn't say positively, Mr. Blythe came back into the little compartment where he was then alone, and said, "Stewart, I believe if I was in your place I would go up and go in the chair car—those fellows are liable to do you bodily harm," and said, "Did you notice that fellow keep putting his hand on his hip pocket?" that he, Stewart, replied, "Yes," and that Blythe said, "I would go back in the chair car where there is more people," and that the conductor then walked out, and that he, Stewart, stood there and studied about a minute and decided that he had better do that, though it looked like running, and that he picked up his suitcase and pushed the door open with his crippled arm, and that after he had passed through the door, and had gone three or four steps from the door, this fellow raised up in his seat and, "Lammed me across the head with a bottle of whiskey"; that the whiskey flew all in his face, and that the bottle cut the brim of his panama hat, and knocked him senseless for a minute, and that when he, Stewart, turned around to pick up his hat, he looked back and between himself and this little door he had come out of was one of those fellows with his sleeves rolled up about his elbows, and the blood was streaming down his arm, he was wiping the blood off with his other hand; that the fellow that struck Stewart was gone before he, Stewart, knew anything about it; that prior to being assaulted he asked Mr. Blythe what all this was about, and that he replied, "Well that fellow got on the train, he was one of the firemen at Waco, and got on the train, a crowd of them, at Fort Worth, and when he went through taking up tickets he came to this fellow who said he could not find his ticket, and he, Blythe, made him pay his fare"; that Blythe said when the fellow came back in there and jumped on him that he had found his ticket in the meantime and had come back to him to get him to refund his money and take the ticket, and that Mr. Blythe said that he would not do it, and told him how to do it, to turn it in to the ticket agent; that Mr. Blythe said something about having quarreled with him before that time; he said that they had fussed about this money, and the fellow got mad about it.

Stewart testified at greater length than stated herein, but the other portions of his testimony consist almost entirely of repetitions of the portions already stated herein.

The conductor, Blythe, testified, in substance, as follows: That he remembered the circumstances happening on his train in May, 1908, at the time one of the passengers struck Stewart with a bottle; that he did not see him when he was struck; that prior to the time he, Stewart,

was struck he had seen him in the small partitioned end of the smoking car where he secured his ticket; that he, Blythe, did not have any difficulty in that compartment with a man prior to the time Stewart was hit with a bottle; that he had some trouble with this man before Stewart was struck just before reaching Stephenville; that in leaving Fort Worth he had eight or ten volunteer firemen of Stephenville; that one of them handed him a ten dollar bill and said he had lost his ticket, and would have to pay his fare; that he gave him a receipt for his money, and when they had reached within two miles or less of Stephenville he went to the front end of the train to commence to take up hat checks from people that were going to get off at Stephenville; that on reaching the front end of the car the man who had paid his fare approached him and said, "I have got my ticket here and want my money back"; that he, Blythe, told him that he would have to take the receipt and his ticket to the agent at Stephenville and he would get a refund of his money; that he, Blythe, could not give it to him; that the man said, "You are the man that got my money, and you are the man that has to give it back to me"; that he renewed his statement to the man that he would have to get it from the agent, and then started through the partition door, not looking for any trouble, and not expecting any, and as he got his back to the man he put his arm around his, Blythe's, neck, and pulled his head back and struck him a glancing blow on the side of the head; that in getting loose from him he was thrown or pushed in some manner against Mr. Stewart, who was lying down on two seats in this small end of the car, and that Mr. Stewart got up and put his fist in the man's face and said, "Damn you, you have caused trouble here all night, and I will whip you and whip you now," and with that the boy passed out into the back end where the rest of the crowd was, and gathered them together and came into the small end, several of them, making the remark that nobody could whip one of their crowd; that he, Blythe, quieted them down, and pacified them, and pushed them out—got them in the other end of the car, and by that time the train stopped at Stephenville; that he, Blythe, went out through the front end and went into the office and transacted his business in there and unloaded his people, and when they pulled out of Stephenville he, Blythe, came in the front end that he had gone out of and there lay the remains of a bottle on the floor, with a very strong smell of whiskey; that the train was pulling into Stephenville when he got these boys back; that when he got them back there they sat down; that he, Blythe, never had any other difficulty with this man than the one difficulty already related by him; that he did not go back where Stewart was after the difficulty he had had in Stewart's presence and did not say to Stewart that he had better get out of there, that those boys were liable to hurt him, and that he never told him anything of that sort at all; that he did not go back in there and say anything to Stewart; that after the little trouble between him and this passenger, and the words that were passed between the passenger and Mr. Stewart, he, Blythe, got all those boys back in the other end of the

car and they sat down; that there was nothing said by any of them back there, and nothing done which caused him to think that they were liable to go back there and assault Mr. Stewart; none of them made any threat against him in his presence or hearing; that the only thing that was said was while they were all there together in the small end of the car; and when he got them back in the other end of the car after this trouble; the train had stopped at that time, or stopped a very short time afterward; that he, Blythe, did not get a chance to take up his Stephenville checks at all; that this man he had a difficulty with had paid his fare to Stephenville, and was a passenger to Stephenville, and was expected to get off there; that at that time, he, Blythe, never anticipated nor expected any further trouble between any one; that he supposed it was all quieted down; that there had been no trouble on the train at all that night; that those boys had slept all night; that the man he had a difficulty with got on the train at Fort Worth, and had probably had a drink or two; that after the train left Fort Worth and pulled out, his conduct was all right; he had been sleeping; there had been no trouble of any sort between Blythe and this man prior to the time the train was approaching Stephenville; that he did not tell Stewart that he had been having trouble with him along the road since he had left Fort Worth; that he did not call Mr. Stewart's attention to the fact that this man had put his hand in his pocket as if to draw a pistol.

The testimony of Stewart and Blythe, quoted, is in conflict in relation to the greater portion of the conduct of the passenger who struck the blow, and that of his companions. In determining whether the conductor was guilty of negligence as a matter of law in failing to eject these parties from the train prior to the assault, the testimony of the conductor as to the conduct of the alleged disorderly passengers should be taken as true, for it was within the province of the jury to believe it, and to reject the testimony of Stewart. If the jury rejected the testimony of Stewart on this question, as it was within their province to do, and believed the conductor instead, then we would not be authorized to hold that the evidence was so conclusive as to the disorderly conduct of the fellow passengers as to establish as a matter of law that it was the duty of the conductor to eject the passengers before the assault was made. The conductor's testimony does not show such a state of facts. The evidence of the conductor was to the effect that the fellow passengers, though they had taken a drink or two, were not disorderly at any time except when one of them assaulted him for not returning his money after he found his ticket; that after the quarrel one of them had with Stewart they all returned to their seats in the coach, and were seated and quiet, apparently pacified, and no further trouble was expected by him; that he did not advise Stewart to go back in another coach, or state that he feared they would make an assault on him if he did not go; that at the time of the quarrel had with Stewart by the fellow passenger the train was within two miles or less of Stephenville, which was the destination of the assaulting party and his as-

sociates, according to their tickets, and it was within the contemplation of the conductor that they would soon leave the train at Stephenville. An ordinarily prudent person situated as he was, and under the circumstances related by him, might not have stopped the train to eject these men when the train would stop at their destination within so short a distance. It presented a question of fact for the jury to determine, and not one of law for the court to decide.

The defendant had pleaded that the assault which was made upon Stewart occurred so suddenly that the defendant's conductor could not have prevented the same. The evidence from the defendant's viewpoint tended to support this defense. It had a right to have such defense submitted to the jury, unless the undisputed evidence showed that the conduct of the fellow passengers was of such a nature as that the conductor was, as a matter of law, guilty of negligence in not ejecting them. Whether or not this is true when considered in the light of Stewart's testimony alone, we do not think it is true if Stewart's evidence should be disregarded, which it was the privilege of the jury to do. We are of the opinion the court erred in refusing the defendant's special charge No. 8, quoted, and for this error the cause should be reversed and remanded.

We have considered the other assignments presented, and do not think any of them presents reversible error.

For the error indicated, the judgment of the honorable Court of Civil Appeals, and the judgment of the District Court, are reversed and the cause is remanded for another trial.

*Reversed and remanded.*